Present:  All the Justices

TIMOTHY L. CANTRELL, ET AL.
                            OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 990224              January 14, 2000

DEBORAH W. CREWS


                  FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                       J. Samuel Johnston, Jr., Judge

     This is the appeal of a judgment in a tort action for

damages arising from a motor vehicle accident.  The dispositive

issue is whether the trial court erred in refusing to strike for

cause a prospective juror.

     In January 1995, appellee Deborah W. Crews was operating an

automobile that was stopped on a street in the City of

Lynchburg.  Her vehicle was struck from the rear and she was

injured as a result of the negligence of appellant Timothy L.

Cantrell, who was operating a truck owned by his employer,

appellant Winn-Dixie Raleigh, Inc.  The plaintiff sustained a

"soft tissue" injury that was diagnosed as a cervical sprain,

for which she brought this action against defendants seeking

recovery in damages.

     In an October 1998 trial, the defendants admitted liability

and the case was tried on the issue of damages only.  A jury

found in favor of the plaintiff and fixed her damages at

$108,812.87.  The trial court overruled the defendants' motion

to set the verdict aside and entered judgment on the verdict. We awarded defendants an appeal limited to consideration of four assignments of error.

An issue raised by a portion of one of those assignments of error is dispositive of this appeal. The issue is whether the trial court erred in refusing to strike for cause a prospective juror who, at the time of trial, was a client of the law firm representing the plaintiff.

There is no dispute in the facts relevant to the issue we decide. The motion for judgment was on stationery of "Law Office / Overbey, Hawkins & Selz / Rustburg, Virginia." The pleading was signed by Mr. Hawkins as "Of Counsel" for "Overbey, Hawkins & Selz." Hawkins appeared at trial as attorney for the plaintiff.

During jury voir dire, after asking whether "anybody" knew the plaintiff's trial attorney, the trial court specified the name of Hawkins' law firm and identified by name each member of the firm, including "Bryan Selz." The court then asked, "Does anybody know any of those individuals or been represented by them or this firm or have any contact with them?"

Responding, prospective juror Holly Clingempeel stated that she knew Selz and said, "He's representing me." When the court asked, "How long ago?", the juror responded, "It's still going on."

2

Later during voir dire, while being questioned by defendants' attorney, Clingempeel revealed that her representation by Selz arose from "a car accident" and stated that she sustained "[n]eck and back" injuries. She said that she had filed a "lawsuit"; that the suit "is continuing right now"; and that Selz is representing her "in that."

Upon being asked by the court whether the fact that Hawkins or a member of his law firm was "currently" representing her would have "any bearing" on her judgment, Clingempeel responded, "No." She further stated that she could "assure" the court "under oath" that she could "ignore" her representation by the plaintiff's law firm "and be totally fair to both sides."

The trial court denied defendants' motion to strike for cause Clingempeel, as well as two other prospective jurors. In ruling on the motion, the court stated it believed the three jurors "can ignore any personal sort of contact or relationship or association they have with Mr. Hawkins, his firm, . . . and the like and be fair and that's the only test."

Elaborating, the trial court stated: "Campbell County is of such a nature that in this community people are going to know each other and have some kind of association and the association as described to me by the three folks to whom you objected to was not such that in and of itself prejudiced them or made an

obvious bias or would lend itself to an obvious bias on their behalf."

Concluding, the trial court said:  "I was impressed with their answers and I believe them to be truthful and I found nothing wrong with them sitting as jurors . . . ."

The plaintiff contends the trial court correctly refused to strike Clingempeel for cause.  We disagree.

Parties to litigation are entitled to a fair and impartial trial by a jury of persons who "stand indifferent in the cause." Code § 8.01-358.  "[T]he right to a fair and impartial trial in a civil case is as fundamental as it is in a criminal case.  The civil courts constantly strive to protect this right.  It lies at the very basis of organized society and confidence in our judicial system."  Temple v. Moses, 175 Va. 320, 336, 8 S.E.2d 262, 268 (1940).

Upon review, the appellate court gives deference to the trial court's decision whether to retain or exclude prospective jurors.  Vinson v. Commonwealth, 258 Va. 459, ___, ___ S.E.2d ___, ___ (1999).  And, a trial court's decision on this issue will be affirmed unless there has been manifest error amounting to an abuse of discretion.  Id. at ___, ___ S.E.2d at ___.

Recently, we considered in a condemnation case an issue almost identical to the present one.  In City of Virginia Beach v. Giant Square Shopping Center Co., 255 Va. 467, 498 S.E.2d 917

4

(1998), one ground of a condemnor's objection to the seating of a prospective commissioner was that the commissioner, at the time of trial, was a client of the landowners' counsel.

There, we noted that, by statute, the issue of just compensation is to be determined by a commission of "disinterested freeholders," and that, regarding the disqualification of commissioners for cause, the eminent domain statutes must be administered in a manner that promotes confidence in the integrity of the judicial process. Id. at 470, 498 S.E.2d at 919.

Thus, we held the trial court abused its discretion in refusing to dismiss the commissioner for cause, stating that "it is extremely unlikely the public would have confidence in the integrity of the process when a commissioner has the identity of interests demonstrated by this prospective commissioner." Id. at 471, 498 S.E.2d at 919. We said, "This is true even though, as the record shows, the commissioner is a 'respected member of the community' and 'known to be a man of integrity,' who may be determined to discharge his duties in a forthright and unbiased manner." Id.

The same reasoning will be applied to this case. There is no meaningful difference regarding the interest factor under these circumstances between the statutory requirements for a trial by jury of persons who "stand indifferent in the cause"

5

and for just compensation to be determined by a commission of "disinterested freeholders." Public confidence in the integrity of the process is at stake. It cannot be promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties to the litigation as a result of a similar occurrence.

This is true even though, as the record shows, the juror states that the circumstances of her representation would have no "bearing" on her judgment as a juror and that she could "be totally fair to both sides." We have no doubt that Clingempeel was sincere in her beliefs and that she was determined to discharge her duties in a forthright and unbiased manner.

And, the fact that the venue is a community where "people are going to know each other and have some kind of association," as the trial judge noted, does not diminish the court's obligation to assure that a litigant's case will be heard and decided by a fair and impartial jury.

Therefore, we hold that the trial court abused its discretion in refusing to dismiss the juror for cause and that this constitutes reversible error.

Because the case will be remanded and the evidence may be different upon a new trial, we shall address only one of the remaining issues presented on appeal. The defendants contend that the trial court erred in limiting their cross-examination

of the plaintiff's treating orthopedic physician, who testified by deposition.

Upon direct examination, the physician, after concluding that the plaintiff sustained a soft tissue injury amounting to a cervical sprain, opined she had a ten percent permanent disability and would require future medical treatment. On cross-examination, defendants elicited from the physician that he had written in his notes that, in his experience, many patients involved in litigation stemming from soft-tissue injuries frequently cease medical treatments "when the litigation is resolved." The physician stated he "certainly considered that" in his evaluation of the plaintiff's complaints.

The trial court excluded this portion of the deposition testimony, over defendants' objection. The court reasoned the physician "was too equivocal"; "[h]e merely said I certainly considered that"; and, the testimony "was too speculative."

Based on the state of this record, we cannot say that the trial court abused its discretion and thus erred in refusing to permit the defendants to offer this evidence to discredit the physician's opinion on permanency and on the plaintiff's need of future medical treatment.

Thus, if the state of the record does not change upon a new trial, this equivocal and speculative testimony should not be

7

allowed.  But see Mastin v. Theirjung, 238 Va. 434, 437-38, 384 S.E.2d 86, 88 (1989) (medical testimony admitted that in people with personalities like the plaintiff's "there is a definite potential for motives of secondary gain, arising out of the possibility of recovery of money damages in a lawsuit").

Therefore, the judgment below will be affirmed in part, reversed in part, and the case will be remanded for a new trial, limited to the issue of damages only.

Affirmed in part, reversed in part, and remanded.